UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:06CR574 DJS |
| | ) |
| CARLOS VALENZUELA-SALAZAR, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). A hearing was held on the motions to suppress on November 15, 2006. Based upon the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Harold Watson is a Special Agent with the Drug Enforcement Administration ("DEA"). In January, 2006, Watson talked to a confidential informant ("CI"), who told him that the Defendant Carlos Valenzuela-Salazar was involved in the sale of multi-kilograms of cocaine and methamphetamine. The CI told Watson that he could purchase this cocaine and methamphetamine from the Defendant.

In order to investigate the Defendant's criminal activity, Watson asked the CI to call the Defendant and record the CI's conversations with the Defendant. No threats or promises were made to the CI in order to induce him to record the telephone conversations. The CI was, at that time,

under criminal charges, and the only representation that Watson made to the CI was that he would make the CI's cooperation known to the United States Attorney's Office. Watson made no recommendations of leniency or better treatment to the CI, and specifically made no promises to the Defendant other than telling him that he would inform the United States Attorney of his cooperation. The CI agreed to record all of his conversations with the Defendant.

The initial calls between the CI and the Defendant were made on the CI's cellular telephone, and the CI operated the recording device himself. The recording device involved an ear piece being attached to the CI's cellular telephone, and the CI operating the "play" and "record" buttons as necessary to capture the conversation. Using this method, the CI recorded calls with the Defendant on February 3, 6, 11, 22, and 23, 2006. He also recorded conversations on March 1 and 5, 2006. All of these conversations were drug related with the Defendant eventually agreeing to sell the CI two pounds of cocaine and two pounds of methamphetamine on March 5, 2006. Pursuant to this March 5, 2006 call, the Defendant told the CI to meet with the Co-Defendant Varela-Robles on that date to receive the cocaine and methamphetamine. After this conversation with the Defendant, the CI met with the Co-Defendant Varela-Robles at an agreed location, and Varela-Robles gave the CI two pounds of cocaine. The Defendant, at that time, could not deliver the two pounds of methamphetamine. The conversation with Varela-Robles was also recorded with the consent of the CI who was equipped with and who operated a hidden recording device.

On March 8, 2006, the Defendant called the CI, and made arrangements for the CI to pay $38,000 for the two pounds of cocaine. The Defendant told the CI to meet with the Co-Defendant Varela-Robles on March 9, 2006, and to pay him the money. On March 9, 2006, the CI met with Varela-Robles and paid him the money. Again, all of the above conversations, including the

conversations with the Defendant Valenzuela-Salazar and with the Co-Defendant Varela-Robles, were recorded with the consent of the CI.

In August, 2006, the Defendant Valenzuela-Salazar called the CI and asked the CI if he was interested in obtaining two pounds of methamphetamine. The CI stated that he was interested, and eventually on August 26, 2006, the Defendant Valenzuela-Salazar arranged to meet with the CI to sell him the methamphetamine on the parking lot of the Casino Queen in St. Louis, Missouri. When the CI arrived at the Casino Queen parking lot, Valenzuela-Salazar told him to park next to a green Jetta automobile. After the informant parked next to the Jetta, Valenzuela-Salazar approached the CI's vehicle and sat in the front seat while the Co-Defendant Varela-Robles obtained a black bag from the Jetta and gave it directly to the CI. Among other items, the black bag was found to contain a large quantity of methamphetamine. All of the above conversations were recorded with the consent of the CI.

Shortly after this exchange took place, the Defendant and the Co-Defendant were arrested by Agent Watson and other agents of DEA. The Defendant's person was searched pursuant to this arrest, and seized from his person was a cellular telephone and certain personal papers.

## Conclusions of Law

A. Consensual Monitoring

Based on the above findings, the undersigned concludes that the monitoring of the conversations between the CI and Valenzuela-Salazar and Co-Defendant Varela-Robles was lawful. The evidence at the hearing revealed that the CI was arrested and was under charges and agreed to cooperate with DEA in about January, 2006. The Defendant was not threatened or coerced into the cooperation, and the only statements made to him were that his cooperation would be made known

3

to the United States Attorney. No promises of leniency were made, nor was any prediction of sentence made to the Defendant. Thus, the undersigned concludes that, contrary to the allegations of the Defendant, the CI was not coerced into cooperating, but instead voluntarily cooperated. Telling a defendant that his cooperation will be made known to the prosecutor has been held not to vitiate the voluntariness even of a confession. See United States v. Meirovitz, 918 F.2d 1376 (8th Cir. 1990); Racklin v. United States, 723 F.2d 1373 (8th Cir. 1983). The evidence shows that all telephone calls and meetings between the CI and the Defendants in this case were made with the permission of the CI and that he was aware that all of the conversations were being monitored. Under these circumstances, it is well established that a law enforcement officer or informant may record conversations between himself or herself and another person without violating the Fourth Amendment or any other law. See United States v. Sileven, 985 F.2d 962 (8th Cir. 1983); United States v. White, 401 U.S. 745, 752 (1971). Thus, as can be seen by the above, the electronic monitoring and recording of telephone calls was lawful, and this evidence should not be suppressed.

### B. The Arrest of the Defendant

Based on the above, the undersigned concludes that the warrantless arrest of the Defendant is valid, as is the search of the Defendant immediately after that arrest.

Police officers may arrest a person without a warrant if they have probable cause to believe that the person arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context–not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). In the context of a warrantless arrest, all that need be shown is a "fair probability" that a crime has been committed and that the defendant

committed it. See Illinois v. Gates, supra. It is also clear that information from a reliable informant without more may provide probable cause for an arrest or the issuance of a search warrant. See United States v. Pressley, 978 F.2d 1026 (8th Cir. 1992). In addition, even an anonymous tip from a crime stoppers hotline or information from an informant whose reliability has not been tested is sufficient information upon which to create probable cause as long as there is an adequate factual basis provided by the person, and the statement is otherwise shown to be reliable through corroboration of even innocent details. See United States v. Briley, 726 F.2d 1301 (8th Cir. 1984).

    In the case now at bar, the undersigned concludes that there was ample probable cause shown to arrest the Defendant in August, 2006. The agents were aware that the Defendant had on one prior occasion delivered two kilos of cocaine to the CI through the Co-Defendant. This sale had been negotiated with the Defendant, and the Defendant made arrangements both for the delivery of the cocaine as well as the exchange of money in payment for the cocaine. In addition, the agents observed and overheard the transaction that took place on the Casino Queen parking lot on August 26, 2006. This involved the Defendant negotiating a two-pound sale of methamphetamine to the CI, and the delivery of this methamphetamine to the CI. Thus, based on the recordings made and the observations of the agents, the undersigned concludes that there was at least a "fair probability" that the Defendant had committed the crime of conspiracy to distribute cocaine and methamphetamine. Thus, the undersigned concludes that the arrest of the Defendant was based on probable cause and was lawful. The search of the Defendant's person incident to that lawful arrest was also proper. See New York v. Belton, 453 U.S. 454 (1981). Therefore, the undersigned concludes that the seizure of the cellular telephone and the personal papers from the Defendant incident to his arrest was lawful and should not be suppressed.

**Conclusion**

Based upon the above, the undersigned finds that the motions to suppress physical evidence should be denied.

\* \* \*

In accordance with the memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion(s) to Suppress Physical Evidence (Docs. #47, 48) be **denied**.

Further, as to the motions to suppress, the parties are advised that they have eleven (11) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

             /s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of December, 2006.